UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| MICHAEL SKORUP, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) CAUSE NO. 3:16-CV-065-PPS-JEM |
| NANCY BERRYHILL, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Michael Skorup appeals the Social Security Administration's decision to deny his application for Child's Insurance Benefits and Supplemental Security Income. An administrative law judge found that Skorup was not disabled within the meaning of the Social Security Act. Because the ALJ did not sufficiently articulate her reasons for denying the application, I will remand the matter back to the ALJ.

### Background

Skorup was 22 years old at the time of his hearing. [A.R. at 20.][1] Throughout his life, he has suffered from several mental health issues, and has been diagnosed with a schizoaffective disorder. [*Id.* at 42.] He was in special education through the majority

---

[1] The administrative record is found in the court record at docket entry 12, and consists of 563 pages. I will cite to its pages according to the Social Security Administration's Bates stamp numbers rather than the Court's Electronic Case Filing page number.

of his schooling and never engaged in substantial gainful employment. [*Id*.] Between 2002 and 2011, he suffered a twelve point loss in IQ. [*Id*.]

Throughout his life, Skorup has received treatment for mental health issues from a cascade of medical professionals. First, in 2001, Dr. Joyce Scully diagnosed the ten-year old Skorup with early onset Bipolar Disorder and Attention Deficit Disorder. [*Id.* at 512-513]. Between March 2007 and February 2008, Skorup received mental health treatment at the Madison Center from Dr. Linda Finn, who identified "oppositional and defiant behavior" and "extreme reactive emotional/behavior reactions" in Skorup. [*Id.* at 296]. In 2010, at the Otis Bowen Center, Dr. Umamaheswara Kalpatapu diagnosed Skorup with Bipolar Disorder and Attention Deficit Hyperactivity Disorder, noting that he would likely "require constant medication for the remainder of his life." [*Id.* at 360.] In 2011, Dr. Alan Wax conducted a clinical interview and diagnosed Skorup with Attention Deficit Disorder and assigned a GAF score of 50. [*Id.* at 425.] GAF stands for global assessment of functioning and it is a common scale used to measure psychological functioning of an individual. A score between 41 and 50 signifies "serious symptoms." Over the years, Skorup's condition ebbed and flowed as medical practitioners sometimes identified improvements and sometimes identified regressions. [*Id.* at 398, 400, 408.]

In a January 2013 examination, Dr. Cadwell identified improvement in Skorup, diagnosing him with a mood disorder not otherwise specified and a GAF score of 55,

though Dr. Cadwell also identified "continued challenges in the home in terms of [Skorup] completing basic activities of daily living." [*Id*. at 435-436.] Similarly, therapists identified fluctuating moods when examining Skorup, noting him one day as "mild," and "manic" on another. [*Id*. at 498, 500.] Indeed, on August 13, 2013, a therapist noted Skorup's mood and affect are "changeable and unpredictable," that "he will go from happy to upset to laughing in the course of a sentence." [*Id*. at 506]. As of April 2013, Skorup was taking at least four medications: Abilify, Cogentin, Lamictal, and Trazodone. [*Id*. at 447.] It is clear that Skorup suffers from mental illness. But the issue before the ALJ was whether his maladies are severe enough to make him "disabled" for purposes of Social Security benefits.

Skorup filed an application for Child's Insurance Benefits and Supplemental Security income on December 3, 2012. [*Id*. at 18.] In both applications, Skorup alleged disability beginning on September 1, 1999. [*Id*.] On January 30, 2013, both claims were denied initially and upon reconsideration on April 19, 2013. [*Id*.]. Skorup filed a written request for a hearing at which he testified. [*Id*.] Andrew Skorup, the claimant's father, and Richard Riedl, a vocational expert, also testified. [*Id*.] The ALJ ultimately denied benefits in a written opinion. [*Id*. at 18-31.]

At the hearing, Skorup testified that his mental health issues persist into the present day. Skorup testified that he has not applied for a job because he "can't pay attention long enough," "gets distracted easily," and can only pay attention to

3

something for about five minutes. [*Id.* at 44-46.] Skorup further testified that his father has to remind him to take his medication and that he depends on his father to drive him because he "can't pay attention long enough" to get a driver's license. [*Id.* at 46-47.] He also testified that he can perform basic chores like doing laundry, but that he could not mow the lawn or use the stove without his father's supervision. [*Id.* at 49-50.] Skorup testified that he can help with babysitting and that he can fetch tools while his friends are doing wood work. [*Id.* at 57-58.] Skorup spends most of his day playing computer games and using Facebook, though he testified he does not know how write a full post on Facebook. [*Id.* at 54-55.]

Skorup's dad confirmed much of what Skorup had to say. He told the ALJ that he has to supervise his son when he mows the lawn and that he has to remind him to take his medications and clean himself. [*Id.* at 59-60.] Further, he testified that his son does not actually babysit by himself and that the neighbors are home when his son helps out. He also testified that his son "never finished" any job he was hired to do, like raking leaves for the neighbors. [*Id.* at 61.]

At the Step three of the familiar five step process used by the Social Security Administration, the ALJ concluded that Skorup has the following severe impairments: mood disorder, schizoaffective disorder, ADHD, and obesity. [*Id.* at 20.] But those impairments do not meet or medically equal the severity of one of the listed impairments. [*Id.*] The ALJ next determined that Skorup has the residual functional

capacity to perform medium work as defined in 20 C.F.R. 404.1567(b). [*Id.* at 23.] And then, based on the RFC, the ALJ concluded that considering the Skorup's age, education, work experience, and residual funcational capacity, there are jobs that exist in significant numbers in the national economy that Skorup can perform and that a finding of "not disabled" is appropriate.

## Discussion

In evaluating Skorup's arguments as to how the ALJ erred, I must keep in mind that judicial review of the Commissioner's decision is limited. If an ALJ's findings of fact are supported by "substantial evidence," then they must be sustained. *See* 42 U.S.C. § 405(g); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This has also been described as sufficient evidence to form a "logical bridge" to the ALJ's conclusions. *See, e.g.*, *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Additionally, the ALJ's reasoning must be sufficiently articulated to permit meaningful review. *See Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). "[W]hat matters are the reasons articulated *by the ALJ*." *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) (emphasis in the original).

I agree with Skorup's claim that the ALJ's Step Three finding is not supported by substantial evidence. Because this case involves mental health issues, the Listings that are issue for the Step Three analysis are Listings 12.02, 12.03 and 12.04. The arcane

5

inquiry for these all three of these Listings is, in part, the same. For all three Listings, the Step Three inquiry consists of two parts. First, the ALJ must consider if the plaintiff satisfies at least two of the four so-called "paragraph B" criteria. Second, the ALJ must consider if the plaintiff satisfies the "paragraph C" criteria. The plaintiff can qualify for benefits if he satisfies <u>either</u> the "paragraph B" criteria <u>or</u> the "paragraph C" criteria. While the ALJ made findings for each of the "paragraph B" criteria, she failed to make adequate findings for all of the "paragraph C" criteria.

The ALJ made findings on each of the "paragraph B" criteria, which allow a claimant to qualify if he has at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart A, App. 1, §12.02(b-c)(2016).

When examining the "paragraph B" criteria, the ALJ made four findings. First, the ALJ found that, in activities of daily living, Skorup has merely a "mild restriction." [A.R. at 21.] Second, the ALJ found that, in social functioning, Skorup merely has "mild difficulties." [*Id*.] Third, with regard to concentration, the ALJ found that Skorup has "moderate" difficulties. [*Id*.] Fourth, the ALJ found that Skorup has experienced no episodes of decompensation that were of "extended duration." [*Id*.] In doing so, the

6

ALJ spent two pages of her opinion discussing medical evidence and hearing testimony regarding Skorup's condition. [*Id.* at 21-22.]

As noted above, under Listings 12.02, 12.03, and 12.04, a claimant can also qualify for benefits if he meets the requirements of "paragraph C," which reads as follows:

> Medically documented history of a chronic affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement."

20 C.F.R. Part 404, Subpart P, App. 1, §12.02(c)(2016).

In contrast to her relatively detailed "paragraph B" findings, the ALJ said little about the "paragraph C" criteria, spending only a single paragraph documenting her findings. Here's what the ALJ had to say about "paragraph C":

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case the evidence fails to establish the presence of the "paragraph C" criteria. The claimant's impairment does not meet any of these C criteria, because, as noted above, the claimant has not experienced any repeated episodes of decompensation of extended duration, she[sic] has only moderate limitation regarding activities of daily living, and there is no evidence that he requires a highly

7

> supportive living arrangement. This finding is consistent with
> the opinions of the State agency psychological consultants,
> who also considered the "paragraph C" criteria and found no
> evidence that the claimant's mental impairments satisfied the
> "paragraph C" criteria.

[A.R. at 23.] In making this finding, the ALJ leaned heavily on the opinions of doctors Pressner and Shipley, non-examining physicians, whose opinions she previously found only were entitled to "some weight." [*Id.* at 22-23.].

Upon reviewing Skorup's case file, Drs. Pressner and Shipley both found that "[e]vidence does not establish the presence of 'C' criteria." [*Id.* at 74, 94.] It appears that the ALJ gave their opinions controlling weight for her "paragraph C" analysis but did so without explaining why she chose to defer to them. Furthermore, the ALJ also seems to rely on her "paragraph B" analysis for purposes of her "paragraph C" analysis, but she fails to specifically point to which evidence supports her conclusions for purposes of "paragraph C." As a result, I have no idea what the ALJ based her findings on and why. This makes it difficult to conduct a meaningful review of her reasoning.

But what concerns me most, and ultimately requires me to remand, is that the ALJ failed to provide analysis on the second prong of "paragraph C," which allows a claimant to qualify if he has a "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." 20 C.F.R. Part 404, Subpart P, App. 1, §12.02(c)(2)(2016). That seems to describe Skorup's condition but the ALJ didn't even mention it. The ALJ was required to make a finding

8

on this prong of "paragraph C" and it does not appear that she did. This failure to form a logical bridge between the evidence and her "paragraph C" findings requires remand.

The ALJ's failure to provide analysis on the second prong of the "paragraph C" criteria is especially problematic because Skorup's primary examining physician, Dr. Shivan Dubey, made a finding on this point. Having treated Skorup since 2012, Dubey diagnosed Skorup with schizoaffective disorder, ADHD, and obesity. [A.R. at 438.] In a March 2013 Mental Impairment Questionnaire, Dr. Dubey noted that Skorup satisfies the "paragraph C"criteria, noting that Skorup has:

> Medically documented history of a chronic organic mental, schizophrenic . . . or affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following . . . a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate.

[*Id.* at 443-444.] In other words, Dr. Dubey states that Skorup satisfies the second prong of the "paragraph C" criteria, but the ALJ did not even mention his opinion in her "paragraph C" analysis, leading me to wonder if she even considered it. And if she did, why did she discount it? While the ALJ has the authority to weigh the evidence and reject Dr. Dubey's opinion, she is required to articulate her reasons for doing so. The ALJ assigned Dr. Dubey's opinion "little weight" with respect to his opinions on the "paragraph B" criteria, but she did not address his opinion on the "paragraph C"

9

criteria. Assuming she also intended to assign Dr. Dubey's opinion little weight with respect to his opinions on the "paragraph C" criteria, she failed to complete the requisite analysis and provide the necessary explanation for doing so.

A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see also White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005). This is a sensible rule because it "takes into account the treating physician's advantage in having personally examined the claimant and developed a rapport while controlling for the biases that a treating physician may develop such as friendship with the patient." *Oakes v. Astrue*, 258 Fed. App'x 38, 43-44 (7th Cir. 2001) (internal citation omitted); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). Of course, ultimately, an ALJ is free to disregard the opinions of a treating source but, if she does so, she must adequately explain her reasons for doing so. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). Failure to do so is cause for remand. *Id.* Furthermore, if an ALJ does not give a treating physician's opinion controlling weight, she is required to consider several factors including the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinions. 20 C.F.R. § 404.1527(c)(2).

The ALJ accorded Dr. Dubey's opinion "little weight" for purposes of her "B paragraph" analysis, but, looking at her opinion, she failed to consider the requisite

factors in deciding to do so. [A.R. at 22, 28]; 20 C.F.R. § 404.1527(c)(2). The ALJ found that Dr. Dubey's clinical findings were "relatively benign" and did not support his opined symptom severity. [A.R. at 22]. In doing so in her Step Three "B paragraph" analysis, she references her explanation of Dr. Dubey's clinical findings in her RFC analysis. [*Id.*] There, after highlighting a few positive notes on Skorup's condition in Dr. Dubey's notes, the ALJ concludes:

> Dr. Dubey's progress notes have consistently shown relatively mild symptoms for quite some time. In addition, although the claimant has some difficulty getting along with his father, the claimant has a girlfriend and some other friends. He also performs odd jobs, including babysitting. In short, the claimant's alleged symptom severity and resulting functional limitation is not supported by the objective evidence to the degree alleged.

[*Id.* at 27-28.] From this explanation, it does not appear that the ALJ examined the requisite factors. Furthermore, she fails to address, and may potentially have disregarded, objective evidence that supports Dr. Dubey's findings. [*See, e.g.*, *id.* at 61 (father's testimony that Skorup usually only "babysits" when the neighbors are actually home, that Skorup never actually finished jobs he was given, and that he thinks people were "just trying to make busy work" for him); *id.* at 296 (March 2007 treatment plan noting that Skorup had "extreme reactive emotional/behavioral reactions"); *id.* at 301 (March 2007 medical assessment assigned Skorup a GAF score of 50, reflecting "serious" symptoms); *id.* at 360 (March 2010 Advanced Practice Nurse Addendum stating that Skorup "hears voices" and will likely "require constant medication for the

11

remainder of his life for this chronic condition"); *id*. at 425 (DSM-IV Diagnosis by Dr. Wax assigning Skorup a GAF score of 50).] While the ALJ may choose not to credit this evidence, it doesn't appear as though she considered it when she assigned Dr. Dubey's opinion little weight.

On remand, as noted, if the ALJ wishes to disregard Dr. Dubey's opinion when analyzing the "C paragraph" prongs, she must consider several factors, including: the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinions. 20 C.F.R. § 404.1527(c)(2). Her failure to consider all of these factors before disregarding Dr. Dubey's opinion is, in and of itself, an additional cause for remand.

In sum, a remand is necessary to permit the agency to further assess the evidence and develop the record regarding whether Skorup qualifies for Social Security benefits at the Step Three analysis under "paragraph C." If the ALJ chooses not to give Dr. Dubey's opinion controlling weight, she must sufficiently explain why. I will not address Skorup's remaining arguments, but the ALJ should consider and address them as appropriate.

## Conclusion

For the reasons stated above, the ALJ's decision denying benefits is **REVERSED** and this cause is **REMANDED** for further proceedings consistent with this Opinion and Order.

12

**SO ORDERED**.

ENTERED: June 23, 2017.

                                              s/ Philip P. Simon
                                        **PHILIP P. SIMON, JUDGE**
                                        **UNITED STATES DISTRICT COURT**